```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/25/2015
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

LEHMAN BROTHERS HOLDINGS, INC.,

                       Plaintiff,

        -v-

HOMETRUST MORTGAGE CO.,

                       Defendant.

------------------------------------------------------------X

15 Civ. 304 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Defendant Hometrust Mortgage Co. ("Hometrust") has moved, under 28 U.S.C. § 157(d), for permissive withdrawal of the reference of adversary proceeding No. 14–2392 to the United States Bankruptcy Court for the Southern District of New York. The adversary proceeding is part of the much broader case *In re Lehman Brothers Holdings, Inc.*, No. 08–13555, pending before the Honorable Shelley C. Chapman, United States Bankruptcy Judge. Plaintiff Lehman Brothers Holdings, Inc. ("LBHI"), the Plan Administrator for the Lehman Brothers estate, has opposed Hometrust's motion. On February 13, 2014, the Court issued a summary order denying the motion and stating that a decision—this Opinion and Order—would follow.

I.     **Background**[1]

LBHI and its affiliates (collectively, "Lehman") once comprised the fourth largest investment bank in the United States. LBHI Br. 3. Historically, Lehman, among many other

---

[1] This account of the facts of this case is drawn from the materials submitted in support of and in opposition to the motion to withdraw the reference, specifically: Hometrust's memorandum of law in support of its motion ("Hometrust Br.") (Dkt. 1); LHBI's memorandum of law in opposition to it ("LBHI Br.") (Dkt. 8); the Declaration of James N. Lawlor in opposition to the motion ("Lawlor Decl.") (Dkt. 9); and Hometrust's reply ("Hometrust Reply") (Dkt. 11).

investment activities, purchased residential mortgage loans, packaged them for securitization or sale, and transferred them to buyers, including government-sponsored entities Fannie Mae and Freddie Mac. *Id.* at 4–5.

On February 14, 2005, Lehman entered into a loan purchase agreement with Hometrust, a loan originator. *Id.* at 6–7. The agreement included certain representations and warranties about the characteristics and quality of the loans. Hometrust expressly agreed to indemnify Lehman against any claims arising out of the purchase of the loans. *Id.* at 7. Lehman later sold those loans to Fannie with co-extensive representations, warranties, and covenants. *Id.*

On September 15, 2008, Lehman filed for bankruptcy. *Id.* at 3.[2] On December 6, 2011, the Bankruptcy Court confirmed the Chapter 11 Plan. *Id.* Under the Plan, LBHI is responsible for liquidating all of Lehman's assets, including litigation claims, so as to maximize distributions to creditors. *Id.*

In 2009, Fannie and Freddie filed claims against Lehman in the Bankruptcy Court, seeking indemnification and reimbursement for allegedly defective mortgage loans they had purchased. LBHI Br. 5; *see also* Lawlor Decl., Exs. A, B. Fannie's claims against Lehman included a demand for compensation related to two allegedly defective loans that originated with Hometrust and were sold to Lehman and then, in turn, to Fannie. LBHI Br. 7.

In January 2014, following extensive negotiations, Fannie and Freddie settled their claims with Lehman. *Id.* at 5. The settlement agreement anticipates that Lehman will bring actions against loan originators and other entities that sold defective loans to Lehman, thereby

---

[2] The bankruptcy case was initially assigned to the Honorable James M. Peck; it was reassigned to Judge Chapman in 2014, when Judge Peck retired.

2

obtaining indemnification or funds to distribute to Fannie and Freddie, among other creditors. *See id.* at 5–6.

LBHI thereafter filed a Complaint against Hometrust in the Bankruptcy Court, alleging improprieties in connection with the sale of two mortgage loans that LBHI ultimately sold to Fannie. *Id.* at 6–7. Specifically, LBHI alleges that Hometrust breached the parties' agreement by failing to disclose certain information about the borrowers, and by delivering loans that were improperly underwritten. Hometrust Br. 2. Hometrust, for its part, argues that LBHI's claim is barred by the statute of limitations. LBHI Br. 8. In response, LBHI seeks a declaration that its indemnification claim against Hometrust accrued on January 22, 2014, the date the settlement between Lehman and Fannie was executed, and is therefore timely. *Id.*

On January 15, 2015, Hometrust moved, in this Court, to withdraw the bankruptcy reference. Dkt. 1. On February 3, 2015, LBHI filed its opposition. Dkt. 8. On February 10, 2015, Hometrust submitted its reply. Dkt. 11.

As of the point at which briefing was complete, Hometrust had a motion to dismiss pending in Bankruptcy Court and a hearing on that motion scheduled for February 17, 2015. *See* Dkt. 5. Hometrust therefore requested that the Court either stay the bankruptcy proceedings or rule prior to the Bankruptcy Court hearing on the motion to dismiss. Dkt. 3. On February 13, 2015, the Court issued a summary order denying Hometrust's motion to withdraw the reference and informing the parties that a written opinion explaining the reasons for the Court's decision—this Opinion and Order—would follow. Dkt. 13.

## II.    Applicable Legal Standards

District courts have original jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). However, a district court

3

may refer these matters to the Bankruptcy Court. 28 U.S.C. § 157(a). The practice of courts in this District is to automatically refer all such cases to the Bankruptcy Court in the first instance. *See In re Standing Order of Reference Re: Title 11*, 12 Misc. 32 (LAP) (S.D.N.Y. Jan 31, 2012); *In re Joseph Del Greco & Co.*, No. 10 Civ. 6422 (NRB), 2011 WL 350281, at *2 (S.D.N.Y. Jan. 26, 2011) (citing *Official Comm. of Unsecured Creditors of the VWE Grp., Inc. v. Amlicke*, 359 B.R. 441, 446 (S.D.N.Y. 2007)). This referral process is not a one-way street: District courts must withdraw a proceeding from the bankruptcy court if resolving the matter would "require a bankruptcy court judge to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes." *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991) (citing, *inter alia*, 28 U.S.C. § 157(d)). District courts also have discretion to "withdraw . . . any case or proceeding referred on its own motion or on a timely motion of any party, for cause shown." 28 U.S.C. § 157(d).

Although § 157(d) does not define "cause," the Second Circuit has instructed district courts to evaluate a motion for withdrawal of a bankruptcy reference in light of several factors. *See Orion Pictures Corp. v. Showtime Networks, Inc.*, 4 F.3d 1095, 1101 (2d Cir. 1993). First, as a "threshold" matter, the Court must determine whether the asserted claim is "core" or "non-core." *Id.* Following the Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), which held that bankruptcy courts lack constitutional authority to enter final judgment on certain claims, *id.* at 2619, courts in this District have concluded that "the relevant inquiry under the first prong of the *Orion* test is . . . whether the bankruptcy court has the authority to finally adjudicate the matter," *In re Arbco Capital Mgmt., LLP*, 479 B.R. 254, 262 (S.D.N.Y. 2012) (collecting cases). Second, the Court must evaluate whether the claim is legal or equitable, and thus whether a right to a jury trial exists. *Orion*, 4 F.3d at 1101. Third, the Court must consider

whether other factors—including the efficient use of judicial resources, delay and cost to the parties, uniformity of bankruptcy administration, and prevention of forum shopping—counsel in favor of maintaining or withdrawing the reference. *See id.*; *S. St. Seaport Ltd. P'ship v. Burger Boys, Inc.*, 94 F.3d 755, 762 (2d Cir. 1996).

### III.  Discussion

The parties agree that the contractual indemnification claim at issue here is non-core and that the Bankruptcy Court lacks authority to enter final judgment on the matter. *See* Hometrust Br. 5–12; LBHI Br. 11. This factor, although important, does not end the Court's inquiry. As the Supreme Court recently explained, when a bankruptcy court lacks authority to enter final judgment, the "proper course is to issue proposed findings of fact and conclusions of law" that the "district court will then review . . . *de novo* and enter judgment." *Exec. Benefits Ins. Agency v. Arkinson*, 134 S. Ct. 2165, 2170 (2014); *see also Lehman Bros. Holdings Inc. v. Intel Corp.*, 18 F. Supp. 3d 553, 557 (S.D.N.Y. May 10, 2014) ("While the core/non-core determination is an important factor, courts have repeatedly emphasized that this factor is not dispositive of a motion to withdraw a reference."). Therefore, if other factors counsel against withdrawing the reference, the Court need not grant Hometrust's motion.

The adversary proceeding between LBHI and Hometrust is properly viewed in its broader context: For more than six years, the Bankruptcy Court has overseen the Lehman bankruptcy proceedings, which courts in this District have described as "the largest and, arguably, the most complex in United States history." *Lehman Bros. Holdings, Inc. v. JP Morgan Chase Bank, N.A.*, 480 B.R. 179, 185 (S.D.N.Y. 2012); *see also Lehman Bros. Holdings, Inc. v. Credit Agricole Corporate & Inv. Bank*, No. 13 Civ. 3373 (LTS) (GWG) (S.D.N.Y. 2013), Dkt. 11, at 8 ("These LBHI bankruptcy cases are among the most large and complex the District has seen.");

*Lehman Bros. Holdings, Inc. v. Ford Global Treasury, Inc.*, No. 12 Civ. 8201 (RA) (S.D.N.Y. 2013), Dkt. 7, at 5 (commenting on the "size and complexity" of the Lehman bankruptcy). And this adversary proceeding is not, as Hometrust claims, *sui generis*. See Hometrust Br. 16. To the contrary, Hometrust is one of 3,000 parties defending against two of 11,000 contractual indemnification claims. LBHI Br. 5–6.

To manage the extraordinary volume of parallel indemnification disputes, the Bankruptcy Court has approved a well-crafted alternative dispute resolution plan. *Id.* at 6. The plan aims to encourage the prompt and efficient settlement of claims by requiring all sellers to exchange settlement offers with Lehman during an initial "notice/response" stage and, if that fails, to participate in mediation with only limited, informal discovery. See Lawlor Decl., Ex. E.

Allowing that plan to run its course will make the most efficient use of the parties' and the Court's resources. The mediation procedure provides an opportunity for the parties to resolve their disputes with minimal cost and delay. *Cf. Ford*, 12 Civ. 8201, Dkt. 7, at 5 ("[A] consideration of efficiency weighs against withdrawing the reference at this time. This is particularly true given Plaintiffs' representation that 'scores of disputes involving derivative transactions are currently being mediated by Bankruptcy Court order.'") (citation omitted). If mediation fails, the Bankruptcy Court may be able to streamline or centralize discovery across the various indemnification actions. *Cf. Intel*, 18 F. Supp. 3d at 557 ("From a practical standpoint, the Bankruptcy Court will oversee discovery in this adversary proceeding, just as it is overseeing discovery in the numerous other proceedings involving swap agreements with Lehman entities.").

Further, the Bankruptcy Court is already "immersed in the issues central to this litigation." *JP Morgan*, 480 B.R. at 195 (quoting *Mishkin v. Ageloff*, 220 B.R. 784, 801 n.13

(S.D.N.Y. 1998)) (alteration in original). Judge Chapman has, to say the least, far greater familiarity with the underlying facts of the Lehman bankruptcy than this Court, and she likely has a superior understanding of the law and theories relevant to the parties' dispute. "This specialized knowledge will contribute to swifter resolution of the claims at issue." *Lehman Bros. Holdings, Inc. v. Wellmont Health Sys.*, No. 14 Civ. 01083 (LGS), 2014 WL 3583089, at *4 (S.D.N.Y. 2014); *see also Lehman Bros. Holdings, Inc. v. Moore Macro Fund LP*, No. 14 Civ. 5053 (WHP), 2014 WL 46335576, at *1 (S.D.N.Y. 2014) ("'Regardless of whether a particular count is core or non-core, it is most efficient and eminently sensible for all disputes involving swap agreements where Lehman and its affiliates are counterparties to be handled in [Bankruptcy] Court.'" (quoting *In re Lehman Bros. Holdings, Inc.*, 502 B.R. 376, 383 (S.D.N.Y. 2013))). If the Bankruptcy Court ultimately reaches a decision in this case, the resulting report and recommendation will save this Court, and the parties, an immense amount of time and effort. *See Wellmont*, 2014 WL 3583089, at *4; *Intel*, 18 F. Supp. 3d at 557–58.

Maintaining the reference will also promote uniformity. To be sure, as Hometrust notes, the indemnification claims are contractual in nature and do not raise substantive issues of bankruptcy law; thus, withdrawing the reference would not affect uniformity in the application of the Bankruptcy Code. Hometrust Br. 15. However, courts in this District also consider intra-case uniformity, recognizing the value of consistent adjudication of similar issues that recur in multiple disputes. *See, e.g., Wellmont*, 2014 WL 3583089, at *5; *Intel*, 558–59. Here, LBHI has expressed the intent to initiate more than 3,000 parallel adversary proceedings, and other counter-parties may raise statute of limitations defenses similar or identical to Hometrust's. If this case proceeds beyond the motion to dismiss stage, there are likely to be many other common

claims and defenses. Accordingly, the interest in uniformity is best served by leaving, at least for the time being, all indemnification claims with the Bankruptcy Court.[3]

For similar reasons, courts in this District have consistently denied motions to withdraw the reference in LBHI adversarial proceedings involving alleged breaches of swap agreements and other derivatives contracts. *See Moore*, 2014 WL 4635576, at *1–2; *Wellmont*, 2014 WL 3583089, at *4–5; *Intel*, 18 F. Supp. 3d at 557–59; *Lehman Bros. Holdings, Inc. v. Federal Home Loan Bank of Cincinnati*, No. 13 Civ. 4121 (RJS) (S.D.N.Y. 2014), Dkt. 30, at 3–5; *Credit Agricole*, 13 Civ. 3373, Dkt. 11, at 8–9. And in a LBHI indemnification case parallel to this one, the Honorable Gregory H. Woods recently denied a motion to withdraw the reference. *See Lehman Bros. Holdings Inc. v. LHM Fin. Corp.*, No. 15 Civ. 300 (GHW) (S.D.N.Y. 2015), Dkt. 14, at 1.[4]

The Court's denial of Hometrust's motion is without prejudice. At this early stage, the risk of duplicative litigation and the need for a jury trial is wholly theoretical. At a later stage, however, those possibilities may become concrete, or other good cause to withdraw the reference may arise, and Hometrust will be at liberty to renew its motion. Otherwise, the Court anticipates that, eventually, it will receive and conduct *de novo* review of a report and recommendation from the Bankruptcy Court to either grant a motion to dismiss, grant summary judgment, or resolve LBHI's claims following a bench trial. Following that review, the Court will rule and enter final judgment. In short, the Court expects that this case may well return to this Court one day, but

---

[3] The interest in preventing forum shopping is a neutral factor because the parties accuse each other of forum shopping. *See* Hometrust Br. 15; LBHI Br. 19.

[4] The Court is not aware of other rulings on motions to withdraw the reference as to LBHI indemnification claims.

finds that the interests of efficiency and uniformity are best served by maintaining the reference during the initial stages of this adversary proceeding.

## CONCLUSION

For the foregoing reasons, Hometrust's motion to withdraw the reference has been denied without prejudice. The Clerk of Court is directed to terminate the motion pending at docket number 1, and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: February 25, 2015
　　　　New York, New York